UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GERALD MAATMAN, SR., ) | |
| ) | |
| Plaintiff, ) | Case No. 09 C 5929 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| LUMBERMENS MUTUAL CASUALTY ) | |
| COMPANY d/b/a KEMPER INSURANCE ) | |
| COMPANIES, JOHN and JANE DOES ) | |
| 1-10, JOHN DOE CORPORATIONS 1-10, ) | |
| and OTHER JOHN DOE ENTITIES 1-10, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION & ORDER**

Gerald Maatman, Sr. filed a three-count complaint in the Circuit Court of Cook County, Illinois against his former employer, Lumbermens Mutual Casualty Company.[1] Maatman claimed he had a pension plan with Lumbermens and that Lumbermens induced him to accept a buyout of that plan by misrepresentations regarding the financial condition of the company. Lumbermens removed the action to this court, asserting that the Employee Retirement Income Security Act of 1974, Pub. L. 93-406, 88 Stat. 829, enacted as amended at 29 U.S.C. § 1001 *et seq.* (2006) ("ERISA"), preempted Maatman's state-law claims, and that this court therefore has federal question jurisdiction over this suit. Maatman now seeks remand, arguing that preemption does not apply to

---

[1] The caption notes that Lumbermens does business as Kemper Insurance Companies, and Maatman, refers in his complaint to Lumbermens doing business as Kemper as "Kemper." Lumbermens states that "'Kemper' is a trade name utilized by Lumbermens and its affiliates. There is no such entity as 'Kemper Insurance Companies.'" (*See* Notice of Removal, Doc. No. 1, at 1 n.1.) This assertion appears to be at least partially belied by a document that Lumbermens attaches to its memorandum in opposition to remand, which suggests that Kemper is indeed a separate corporation, and not just a "trade name." (Opposition Ex. B.) In any case, the parties do not assert that this disagreement is material to the resolution of this motion, and the court does not find it to be so.

1

what he characterizes as the "unusual circumstances" of this case. For the reasons stated herein, Maatman's motion for remand is denied.

## I. BACKGROUND

Maatman was the chief executive officer of Lumbermens, and so was eligible for a supplemental retirement plan known as the SERP.[2] It is unclear when Maatman joined the SERP, but he remained a participant after his retirement in 1995. Several years after Maatman's retirement, Lumbermens suffered serious financial difficulties, including losses of millions of dollars, and faced liquidation, or so Lumbermens allegedly represented to Maatman. After making these representations, Lumbermens offered SERP participants including Maatman a lump-sum buyout which Maatman alleges was equivalent to about 14 percent of the value of his benefits under the SERP. Maatman alleges that to induce him to accept the offer, Lumbermens "painted the bleakest possible picture" of its condition, and that, relying on Lumbermens's representations, he accepted the offer. But liquidation has not happened, Lumbermens's fortunes have apparently improved, and Maatman alleges that his former employer duped him.

Maatman brought the action in state court premised on state-law fraud, unjust enrichment, and breach of fiduciary duty claims. In his fraud claim, Maatman asserts that he was wrongfully induced to accept a buyout of his SERP benefits, Compl. ¶¶ 1, 16, by Lumbermens's representations, which regarded the viability of both the corporation and the SERP. (*Id.* ¶ 18.) Maatman asks for actual damages, making specific allegations about the comparative value of the buyout and his SERP benefits at the time of the

---

[2] The parties differ on whether SERP's full name was the Kemper Supplemental Retirement Plan or the Kemper Supplemental *Executive* Retirement Plan. The acronym given by both parties suggests that the latter name is correct, but attached documentation suggests the former. In any case, the parties both refer to the plan as SERP, and the court adopts that terminology.

2

buyout. (*Id.* ¶¶ 17, 27.B.) In his unjust enrichment claim, Maatman seeks actual damages, punitive damages, disgorgement of ill-gotten gains, and equitable relief for Lumbermens' "retention of the aforesaid unlawfully reduced SERP liability." (*Id.* ¶ 30.) Finally, in his breach of fiduciary duty claim, Maatman alleges that Lumbermens made misstatements and omissions regarding both Lumbermens' financial condition and "the likelihood that Plaintiff would receive money owed to him under the SERP," leading to Maatman's acceptance of the buyout offer. (*Id.* ¶¶ 34-36.)

## II. ANALYSIS

As the removing party, Lumbermens has the burden of establishing this court's jurisdiction. *In re Application of Cty. Collector of Winnebago, Ill.*, 96 F.3d 890, 895 (7th Cir. 1996); *see also Stevo v. CSX Transp., Inc.*, 940 F. Supp. 1222, 1223 (N.D. Ill. 1996). If Maatman's claims are completely preempted, the court has subject matter jurisdiction over this removed action, as complete ERISA preemption supports federal question jurisdiction. *See Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 601 (7th Cir. 2008). If ERISA does not completely preempt Maatman's claims, the court has no jurisdiction and remand is proper. *See* 28 U.S.C. § 1447(c).[3]

In evaluating Maatman's motion, it is worth noting that both the Supreme Court and the Seventh Circuit have instructed that ERISA broadly preempts state laws. *See*

---

[3] Federal law can preempt state law completely or merely by conflict. Complete preemption provides a basis for federal question jurisdiction; conflict preemption may provide a defense to a state law claim but not an independent basis for federal jurisdiction. *See Franciscan Skemp Healthcare*, 538 F.3d at 601. Because it does not provide a federal jurisdictional basis, conflict preemption is irrelevant to the disposition of the instant motion.
 Lumbermens does not assert that there is any other basis for federal question jurisdiction or federal jurisdiction generally.

3

*Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 640 (7th Cir. 2007) (quoting *Egelhoff v. Egelhoff ex. rel. Breiner*, 532 U.S. 141, 146 (2001)). Indeed, the Seventh Circuit has stated that "the preemptive force of ERISA is so powerful that it converts 'a state claim into an action arising federal law,' even if the plaintiff does not want relief under ERISA." *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64 (1987)).

Maatman asserts that his causes of action are not preempted because: the SERP was either not subject to ERISA or not subject to ERISA's "comprehensive regulation"; Lumbermens' representations that support his claims do not relate to the SERP, but rather to the financial condition of the company; and Lumbermens's administration of the SERP is unaffected by Maatman's claims.

A. **Whether SERP was subject to ERISA**

The first question is whether the SERP was subject to ERISA and its regulations. In attempting to answer this question, Maatman discusses "excess benefit" plans and "top hat" plans, which merit brief discussion. "Excess benefit" plans serve the sole purpose of avoiding the strictures of § 415 of the Internal Revenue Code, which limit benefits and contributions under ERISA-qualified plans. *Garratt v. Knowles*, 245 F.3d 941, 946 n.4 (7th Cir. 2001). Excess benefit plans are completely exempt from ERISA. *Id.* "Top hat" plans, by contrast, are unfunded plans that "the employer maintains 'primarily for the purpose of providing deferred compensation to a select group of management or highly compensated employees.'" *Id.* (quoting 29 U.S.C. § 1051(2)). Top hat plans are subject to ERISA's enforcement provisions, but not its "vesting, participation, funding, and fiduciary rules." *Id.*

Maatman asserts that the SERP was not an excess benefit plan, *see* Mem. 12, but rather a top hat plan. (*Id.*) He appears to be correct. The SERP was intended not just to avoid the limitations of § 415 of the Internal Revenue Code, but also §§ 401 and 402(g), Sprenger Decl. Ex. C ¶ 2.2, and is therefore a top hat plan. *See Garratt*, 245 F.3d at 946-48. Although ERISA generally preempts state laws regarding top hat plans, *see Olander v. Bucyrus-Erie Co.*, 187 F.3d 599, 604 (7th Cir. 1999); *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 113-14 (2d Cir. 2008), Maatman argues that the facts of his case counsel against the general rule of preemption. However, Maatman cites no case law to support departure from the general rule, and sets forth no facts, aside from those discussed within, that would permit such a result.

The court is unable at this stage to conclude anything other than that which the parties agree and which the SERP bears out: the SERP is a top hat plan, and state-law claims related to the SERP are therefore generally preempted by ERISA.[4]

### B. Whether the Representations "Relate to Any Employee Benefit Plan"

SERP-related state-law claims are preempted, leaving the remaining question of whether Maatman's claims relate to the SERP. Maatman argues that Lumbermens's representations at issue here do not relate to the SERP plan, but rather to the company's health, and so ERISA does not completely preempt his claims. This contention stems from the statute itself, which states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C.

---

[4] In support of his argument, Maatman cites, according to his characterization, two "chopped off cop[ies] of . . . document[s] in plaintiff's possession." The relevance of these documents is unclear. Perhaps Maatman wants the court to believe that someone, possibly Lumbermens, stated that ERISA did not apply to the SERP. Even if he is so arguing and these documents so establish (matters that are far from clear), Maatman points to no authority suggesting that Lumbermens's representations in these unidentified documents would be relevant to the court's resolution of the instant motion.

§ 1144(a). While the term "relate to" remains undefined by statute or regulation, the Supreme Court has stated that "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines*, 463 U.S. 85, 96-97 (1983). That Maatman brings his claims under general state tort laws is of no moment, for a "state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990) (internal citations omitted).

The Seventh Circuit, quoting Supreme Court precedent, has recently spoken on the scope of complete ERISA preemption:

> [I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 597 (7th Cir. 2008) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)) (internal quotation marks omitted). The court analyzes each element in turn.[5]

---

[5] Neither Maatman nor Lumbermens cite or apply the relevant standard for whether a claim relates to an ERISA plan. Lumbermens frames its argument under a three-part standard previously used in this circuit, but that the Seventh Circuit recently noted had been displaced by the above-quoted standard. *Compare Klassy v. Physicians Plus Ins. Co.*, 371 F.3d 952, 955 (7th Cir. 2004) (quoting *Jass,* 88 F.3d at 1487) (setting forth three-factor analysis) *and Franciscan Skemp Healthcare*, 538 F.3d at 597 n.1 ("While the *Jass* decision itself has not been called into question, we find that the test outlined by the Supreme Court in *Davila* displaced the three-prong *Jass* analysis previously used in this circuit."). The court therefore analyzes Maatman's claims under the two-element test announced in *Davila*. *See Franciscan Skemp Healthcare*, 538 F.3d at 597 n.1 (noting that result would be the same under either test); *see also Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, --- F.3d ----, Nos. 08-15268, 08-15277, 2009 WL 5126236, at *4 (11th Cir. Dec. 30, 2009) (collecting cases in which appellate courts have applied *Davila*'s two-part test). While both *Davila* and *Franciscan Skemp Healthcare* involved the denial of medical coverage, and not a claim for pension benefits, the standard as quoted makes no distinction between the two

1. <u>Whether Maatman could have brought his claim under ERISA § 502(a)(1)(B)</u>

Section 502(a)(1)(B), enacted as 29 U.S.C. § 1132(a), allows for private actions by a "participant." Maatman was a SERP participant at the time of Lumbermens's allegedly wrongful conduct. *See* 29 U.S.C. § 1002(7) (defining "participant" in relevant part as a "former employee . . . who is . . . eligible to receive a benefit of any type from any employee benefit plan."). Maatman is now a former employee who does not appear to be eligible to receive benefits from the SERP, and so there is some question as to whether he is currently a participant. At least one court in this circuit has applied a broad definition of "participant" to include former participants, *see Wright v. Bosch Trucking Co.*, 804 F. Supp. 1069, 1072-73 (C.D. Ill. 1992), and one court in this district has noted that former plan participants may, in certain situations, bring suits under ERISA. *See Baker v. Kingsley*, No. 03 C 1750, 2007 WL 1597654, at *2 (N.D. Ill. May 31, 2007). It appears that, while Maatman is no longer literally a "participant," he was, at one point, eligible to bring a claim under § 502(a). *See Davila*, 542 U.S. at 210.

Given that Maatman at one point could have brought claims under § 502(a)(1)(B) generally, the remaining question is whether Maatman could have brought these

---

types of claims, nor does § 502(a)(1)(B). *See also Thurman v. Pfizer, Inc.*, 484 F.3d 855, 860 (6th Cir. 2007) (applying *Davila*'s two-part standard to a pension benefits case).

Maatman does not follow any Seventh Circuit standard, current or former, but instead argues that Lumbermens's representations do not "relate to" the SERP, an argument that rests on shaky footing, both factually and legally. First, Maatman, in his complaint, alleged that Lumbermens's representations concerned both the health of the company *and* the security of his benefits under the SERP. (*See* Compl. ¶¶ 18(d), (e), 24, 34.) His own complaint, then, undermines his claim that the representations only "relate to" the company's health. Second, Maatman cites several out-of-circuit and district court cases regarding the scope of the phrase "relate to." These cases likewise undermine his argument. Maatman principally relies on *Forbus v. Sears Roebuck & Co.*, 30 F.3d 1402, 1404, 1405-06 (11th Cir. 1994), in which the Eleventh Circuit addressed representations that induced plaintiffs to resign from employment. The misrepresentations in *Forbus* related to plaintiffs' employment and not to their ERISA plans, while plaintiffs were induced to resign their positions, and not to accept a premature buyout of their benefits. *Id.* at 1406. *Forbus* is readily distinguishable, as are the other cases cited by Maatman.

7

particular claims under § 502(a)(1)(B). Lumbermens asserts that the answer is in the affirmative, arguing first that Maatman's claims concern his election between two options under the SERP, and therefore fall within the scope of ERISA, and then that, in any case, the state-law claims that he raises are of the sort that are generally preempted.

Certainly, if Lumbermens deceived Maatman in his choice between two benefit options under the SERP, Maatman's claims arising from that deception would fall within the scope of ERISA. *See Anderson v. Humana, Inc.*, 24 F.3d 889, 891 (7th Cir. 1994) ("A claim . . . that employees were fraudulently induced to pick one option under a plan rather than another, lies comfortably within the zone of exclusive federal control."). Lumbermens urges that Maatman has alleged just such a deception here, asserting that it adopted the buyout option under the SERP, so that Maatman, in choosing between a buyout and his full SERP benefits, really chose between two SERP options. But the evidence for its assertion that it adopted the buyout as an option under the SERP is a collection of unsigned corporate documents (submitted by Maatman, no less) with no competent evidence of their relevance, effectiveness, or adoption. Without greater clarity and foundation regarding the meaning and effectiveness of these documents, the court cannot conclude that the buyout was indeed an option under the SERP.

Lumbermens' second argument is that the causes of action that Maatman asserts–state-law fraud, unjust enrichment, and breach of fiduciary duty–fall within the scope of § 502(a)(1)(B). Section 502(a)(1)(B) allows a participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Of course, not all state-law fraud, unjust enrichment, and breach of fiduciary duty claims

would be preempted by ERISA, making an examination of Maatman's particular claims necessary. *See Tr. Of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 782 (7th Cir. 2002) (noting that certain "run-of-the-mill" state-law tort claims fall "outside the scope of ERISA's preemption clause").

According to Maatman's allegations, the basis of his claims is a form letter from Lumbermens, offering a buyout of SERP benefits. (Compl. ¶¶ 15, 16.) In his allegations, Maatman repeatedly references the difference between the buyout offer and the full value of his SERP benefits, *id.* ¶¶ 16, 19, which difference, his complaint further makes clear, constitutes his alleged injury. (*Id.* ¶¶ 26, 29.) In other words, according to Maatman's allegations he seeks "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B).

Courts have found that ERISA preempts state-law fraud claims for the recovery of benefits owing under an ERISA-covered plan. *See Dwyer v. Unum Life Ins. Co. of Am.*, No. 03 C 1118, 2003 WL 22844234, at *5-*6 (N.D. Ill. Dec. 1, 2003); *see also Transitional Hosps. Corp. v. Blue Cross & Blue Shield of Tex., Inc.*, 164 F.3d 952, 954 (5th Cir. 1999); *Franklin v. QHG of Gadsden, Inc.*, 127 F.3d 1024, 1028 (11th Cir. 1997). State-law unjust enrichment claims seeking benefits owing are likewise preempted. *See, e.g.*, *Oplchenski v. Parfums Givenchy, Inc.*, No. 05 C 6105, 2007 WL 1933149, at *4 (N.D. Ill. June 27, 2007); *see also Stevenson v. Bank of N.Y. Co., Inc.*, No. 06 C 04268, 2009 WL 919442, at *9 (S.D.N.Y. Mar. 26, 2009); *Garratt*, 245 F.3d at 948. Here, because Maatman asserts claims that rely on the existence of the SERP, alleges injuries arising from the administration of the SERP and his buyout, and seeks benefits due to him under the SERP, his claims fall within the scope of § 502(a)(1)(B).

ERISA's preemptive effect on Maatman's breach of fiduciary duty claim is less straightforward. Maatman alleges that Lumbermens's fiduciary duty to him arose from the trust established to administer the SERP. (Compl. ¶ 34.) The damages he alleges he suffered by virtue of Lumbermens's breach of this duty consist of the difference between the lump-sum buyout and his SERP benefits. (Compl. ¶¶ 35-36.) As with his other claims, the injury Maatman alleges and the relief he seeks bring his breach of fiduciary duty claim within § 502(a)(1)(B). However, as noted above, top hat plans such as the SERP are not subject to ERISA's fiduciary rules. *See Garratt*, 245 F.3d at 946 at n.4. Therefore, as case law makes clear, Maatman may not have a breach of fiduciary duty claim under the SERP. *See, e.g.*, *id.* at 949; *see also Holloman v. Mail-Well Corp.*, 443 F.3d 832, 842 (11th Cir. 2006) (collecting cases stating that there is no cause of action for breach of fiduciary duty relating to a top hat plan). Yet, as Lumbermens points out, whether Maatman will be left without a federal cause of action for breach of fiduciary duty and whether ERISA completely preempts Maatman's state-law claims are two separate questions. *See Lister v. Stark*, 890 F.2d 941, 946 (7th Cir. 1989); *see also Garratt*, 245 F.3d at 948-49. Maatman's breach of fiduciary duty claim, like his other state-law claims, clearly falls within the scope of § 502(a)(1)(B).

  2. <u>Whether Lumbermens's actions implicate another legal duty</u>

The remaining question is whether Maatman alleges any legal duty independent of ERISA or the terms of the SERP. Maatman's only allegations that Lumbermens owed him any legal duty reference the SERP and the trust established to pay benefits under the SERP. (Compl. ¶¶ 34-35.) His other allegations make equally clear that any duties owed and liabilities incurred by Lumbermens were in connection with the SERP, and not independently thereof.

## C. Whether Maatman's claims interfere with administrative obligations

Maatman raises the additional argument that ERISA does not preempt his claims because his claims would not interfere with any of the administrative obligations under the SERP. Maatman derives this argument from the Supreme Court case of *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987), from which he quotes the following excerpt:

> The requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation. The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control. Rather, the employer's obligation is predicated on the occurrence of a single contingency that may never materialize.

*Id.* at 9, 11, 12. According to Maatman, the one-time, lump-sump buyout that he received required no administrative scheme whatsoever, and so, like the payment at issue in *Fort Halifax Packing*, does not implicate ERISA. In *Fort Halifax Packing*, the question was whether a plan existed sufficient to implicate ERISA; the Court held that the single payment was insufficient to constitute a plan. *See id.* at 12 ("The Maine statute neither establishes, nor requires an employer to maintain, an employee benefit *plan*." (emphasis in original)); *see also Collins v. Ralston Purina Co.*, 147 F.3d 592, 595-96 (7th Cir. 1998). As discussed above, the SERP is a top hat plan subject to ERISA's enforcement provision. Maatman would have the court disregard the SERP and instead find that the buyout he received is the real center of the inquiry, and that the buyout does not implicate ERISA. However, his allegations make clear that the duties he seeks to impose on Lumbermens arise from its administration of the SERP, and that his alleged injuries arise from benefits to which he alleges he was entitled under the SERP. The existence of the SERP, and its relation to this case, render *Fort Halifax Packing* distinguishable.

## III. Conclusion

Under the relevant Supreme Court standard in *Davila*, Maatman's state-law claims are preempted by ERISA. Therefore, this court has jurisdiction, and his motion for remand is denied.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: January 28, 2010